1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  SONIA L. GRYDER,                          No. CIV S-09-2052-CMK

12              Plaintiff,

13        vs.

14  COMMISSIONER OF SOCIAL              <u>MEMORANDUM OPINION AND ORDER</u>
    SECURITY,
15
              Defendant.
16  _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

21  before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-

22  motion for summary judgment (Doc. 26).  For the reasons discussed below, the court will deny

23  plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

24  for summary judgment.

25  / / /

26  / / /

                                              1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on May 2, 2005, alleging an onset of disability on March 10, 2005, due to physical and mental impairments. (Certified administrative record ("CAR") 31-34, 90). Specifically, plaintiff claims disability based on impairments due to fibromyalgia, osteoporosis, pain, insomnia, fatigue and inability to focus. (CAR 81). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, three of which were held on October 20, 2008, March 20, 2008, and August 19, 2008, before Administrative Law Judge ("ALJ") Peter F. Belli. In an October 8, 2008, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1.   The claimant last met the insured status requirements of the Social Security Act on March 31, 2008.

2.   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 10, 2005 through her date last insured of March 31, 2008 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.   Through the date last insured, the claimant had the following severe impairments:  fibromyalgia and severe osteoporosis (20 CFR 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[3] except she has slight limitations [FN1] in her ability to:  understand, remember, and carry out detailed instructions; make judgments on detailed work-related decisions; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. She has no limitations in the ability to interact with the public, co-workers, or supervisors.

> [FN1:  Slightly limited is defined as some mild limitations in this area of functioning, but the individual can generally function well.]

6.   Through the date last insured, the claimant's past relevant work as a police dispatcher, cashier, and housekeeper did not require the

---

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

[3]  20 C.F.R. § 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant was not under a disability, as defined in the Social Security Act, at any time from March 10, 2005, the alleged onset date, through March 31, 2008, the date last insured (20 CFR 404.1520(f)).

(CAR 8-17).  After the Appeals Council declined review on May 27, 2009, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

### III.  DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly assessed plaintiff's residual functional capacity, including (a) rejecting functional limitations assessed by medical professionals, (b) failing to find plaintiff suffered from severe mental limitations at step two, and (c) discounting the testimony of plaintiff and third party witnesses; and (2) the ALJ failed to pose a properly crafted hypothetical to the vocational expert which accurately reflected all of her functional limitations.

### A.  SEVERE IMPAIRMENTS

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[4]   In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

---

[4]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1    Here, the ALJ found plaintiff's severe impairments consisted of fibromyalgia and

2    osteoporosis.  He found plaintiff had other impairments, including asthma and depression, but

3    that these impairments were mild and did not result in anything more than mild limitations.

4    Thus, those impairments were determined to be non-severe.

5    Plaintiff argues this determination was erroneous as it failed to include her

6    depression and post-traumatic stress disorder (PTSD) as severe impairments.  Defendant

7    contends there was no error as plaintiff's depression and PTSD lacked evidentiary support and

8    had no more that a mild impact on her abilities.

9    The only medical evidence in the record related specifically to plaintiff's mental

10   health[5] was from the psychiatric consultative examination, which occurred on August 13, 2005,

11   with Dr. Hisham Soliman.  Dr. Soliman found that plaintiff would likely improve within 12

12   months or so, and should be able to function without any trouble.  (CAR 294).  Specifically, Dr.

13   Soliman stated:

14           She should be able to perform simple and repetitive tasks.
         She should be able to accept instructions from supervisors and
15       interact positively with coworkers and the public.  She would be
         able to perform work activities on a consistent basis.  She could
16       maintain attendance and complete a normal workday and
         workweek without interruption from a psychiatric condition.
17           Obviously, this is a claimant who has been having some
         depressive symptoms.  She also has marijuana abuse problems that
18       she stated is medical marijuana for her pain.
             Considering all those factors and the high functionality of
19       the claimant throughout the mental status examination, she should
         be able to function in a routine, work-like setting without
20       decompensation from any psychiatric condition at this time.

21   (CAR 294).

22   In May 2007, plaintiff had a suicidal attempt, wherein she attempted suicide with

23   "superficial cuts to wrists."  (CAR 193).  At the time, she attributed her suicidal attempt to her

24   _____

25       [5]     The record also consists of various references to plaintiff's depression and PTSD,
     but none of those references were from a treating mental health professional.  Rather, they were
26   noted in plaintiff's records relating to her fibromyalgia and were not discussed in any detail.

physical pain, her apparent marital separation, and feelings of depression.  She was apparently held at the hospital for a short time.  Upon assessment by the doctor, she stated her chief complaint was depression.  The clinical impression was alcohol intoxication, suicide attempt and depression.  She was discharged home in improved condition, and was instructed to follow up with her primary care physician and a psychiatrist.  However, there does not appear to have been any follow up.

As to plaintiff's depression, the ALJ found her depression to be mild, which "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (CAR 16).  The ALJ then analyzed plaintiff's depression pursuant to the "four broad functional areas known as the 'paragraph B' criteria."  (Id.)  In so doing, the ALJ found that plaintiff's activities of daily living are only mildly limited due to a mental impairment, noting her claims relate more to her pain; she is only mildly limited in her social functioning, again noting her claims of limitations in this area relate more to her pain, and noting plaintiff has not been diagnosed with panic attacks, social phobia, or volatile behaviors and the medical sources found no more than mild limitations; in the area of concentration, persistence or pace, plaintiff is again only mildly limited based on the normal mental status examination and her ability to perform household activities except when limited by pain; and as for decompensation, the ALJ found that plaintiff experienced no episodes of decompensation, that the record fails to document any severe exacerbation of depression, and noting that her suicidal attempt was superficial and was a reaction to her physical impairments.

The undersigned finds that plaintiff failed to meet her burden in demonstrating that her depression and possible PTSD are sufficiently severe to limit her ability to do basic work activities.  She failed to provide any medical evidence to support her claim; the only medical evidence in the record consists of the consultative examination which did not find any significant limitations.  The few notations in her medical records referencing depression or PTSD are insufficient.  Similarly, the emergency room visit notes following her suicide attempt, while

1    relevant, do not undermine the ALJ's analysis.  The ALJ's findings are supported by the

2    evidence, and will not be disturbed.  The undersigned does not find any error[6] in the ALJ's

3    analysis of plaintiff's mental condition.

4                    **B.    MEDICAL OPINIONS**

5                    The weight given to medical opinions depends in part on whether they are

6    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

7    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

8    professional, who has a greater opportunity to know and observe the patient as an individual,

9    than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

10   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

11   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

12   (9th Cir. 1990).

13                   In addition to considering its source, to evaluate whether the Commissioner

14   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

15   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

16   uncontradicted opinion of a treating or examining medical professional only for "clear and

17   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

18   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

19   by an examining professional's opinion which is supported by different independent clinical

20   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

21   1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

22   rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

23   _____

24   [6]        To the extent there was any possible error in the ALJ's analysis, the undersigned
     finds any error would have been harmless.  See Batson v. Commissioner of Social Security, 359
     F.3d 1190 (9th Cir. 2004).  Even if the ALJ erred in not finding plaintiff's depression and/or

25   PTSD to be severe, he still addressed plaintiff's mental capacity in his determination of her
     abilities.  Thus, any error therein would have been harmless as it had no impact on his

26   determination.

81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

without other evidence, is insufficient to reject the opinion of a treating or examining

professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

see also Magallanes, 881 F.2d at 751.

Here, plaintiff argues the ALJ failed to provide proper reasons for not crediting

her treating or examining physicians, and instead relied on the non-examining, agency physician.

Defendant contends the ALJ properly addressed the medical opinions and gave valid reasons for

weighing the opinions as he did.

In discussing the medical opinions, the ALJ discussed each of the consultative

examining physician's opinions, as well as noting the limited treating physicians' records.  None

of plaintiff's treating physicians opined as to her abilities.  Plaintiff had three internal medicine

consultative examination.  As to those examining physicians' opinions that ALJ set forth the

following:

> The claimant underwent an internal medication consultative
> examination by Uman Ali, M.D., on August 13, 2005.  Her chief
> complaints were fibromyalgia and osteoporosis.  She said that she
> might have had a fracture of her ribs about three months earlier.
> Upon examination, the claimant had multiple trigger points with
> tenderness to palpitations in the upper and lower back, elbows,
> forearms, and legs.  She also had muscle spasm.  Motor strength,
> range of motion, reflexes, and sensation were intact.  The
> claimant's gait was normal.  Dr. Ali was of the opinion that the
> claimant could lift and carry 20 pounds of weight.  She could stand
> and walk for two hours with breaks every half hour.  She could sit
> for six hours with breaks every two hours.  She would have
> difficulty climbing or pushing and pulling of heavy objects.  She

would have difficulty manipulating fine and gross objects (Exhibit 25F).

State agency medical sources reviewed the record and concluded that the limitations assessed by Dr. Ali were too restrictive based on the limited findings. They concluded that the claimant could perform the full range of light work with occasional climbing, stooping, kneeling, crouching, squatting, or crawling (Exhibits 31F-38F).

. . .

The claimant underwent another internal medicine consultative examination by George Wettach, M.D., on December 27, 2006. Her chief complaints were diffuse joint pain, diffuse muscle pain, and low back pain. Clinical findings were essentially normal with full range of motion of the back and extremities, normal strength, normal sensation, and normal reflexes. The claimant had normal grip strength and no atrophy of the extremities. She was able to walk without difficulty and got on and off the examining table without a problem. Dr. Wettach was of the opinion that the claimant could perform light work with occasionally postural limitations on bending, stooping, and crouching secondary to low back pain. He also assessed occasional manipulative limitations on reaching, handling, feeling, and grasping based on the claimant's allegation that she dropped objects with both hands (Exhibits 78F-82F).

. . .

The claimant underwent a third internal medicine consultative examination by Jenna Brimmer, M.D., on April 24, 2008. Her chief complaint was severe osteoporosis. She said that she had asthma treated with an inhaler. She has never seen a pulmonologist nor had a pulmonary function study. She was never on Prednisone or hospitalized for a breathing problem. She continued to smoke. Upon examination, the claimant moved easily around the room and moved her hands and arms without difficulty. She had full range of motion of the back and extremities. Strength, motor functioning, sensation, and reflexes were normal. Lung and heart sounds were normal. Pulmonary function studies were performed and were normal. Dr. Brimmer noted that the claimant had no significant objective abnormalities. There were no limitations in walking, standing, sitting, lifting, carrying, postural, manipulative, visual, communicative, and environmental limitations (Exhibits 119F-135F).

(CAR 19-20).

/ / /

10

The ALJ also noted plaintiff's treating physician records.  Plaintiff had been seen by Dr. Blasingame, in November 2004, when she had tender points consistent with fibromyalgia and was referred to a rheumatologist.  She was seen by the rheumatologist, Dr. Powell, in early 2005, who created a plan to provide plaintiff medication and therapy to treat her fibromyalgia. She saw Dr. Blasingame again in January 2006 for rib pain, thinking she had broken a rib, but could not afford an x-ray so was treated with pain medication.  Then in December 2006, plaintiff underwent a DEXA examination and was diagnosed with severe osteoporosis, for which medication was recommended.  An x-ray in May 2007 was normal, showing no rib fracture associated with her rib pain.

As to these medical opinions, the ALJ gave the greatest weight to the stage agency physician's opinion "because it best represents the limitations based on the claimant's level of treatment, the objective findings, and consideration of her subjective complaints."  (CAR 21). He stated the limitation to light lifting is consistent with both Dr. Ali and Dr. Wettach's opinions; he rejected Dr. Brimmer's opinion that plaintiff had no lifting limitation because it failed to consider plaintiff's musculoskeletal pain and severe osteoporosis.  The state agency physician's opinion as to plaintiff's exertion abilities was similarly credited.  The ALJ stated:

> State agency sources indicated that the claimant could stand/walk for six hours out of an eight-hour workday and sit six hours out of an eight-hour workday.  This conclusion is supported by the clinical findings noted above, and lack of atrophy or strength loss in the extremities.  It is also consistent with the opinions provided by Dr. Wettach and Dr. Brimmer concerning standing, walking, and sitting.  Dr. Ali stated that the claimant could stand/walk only two hours total in an eight hour [day] with a break every 30 minutes.  However, the more restrictive limitations assessed by Dr. [Ali][7] are rejected because they are inconsistent with all of the other medical opinions of record, and are not supported by the limited clinical findings and minimal treatment.

(CAR 21).

---

[7]     The ALJ stated Dr. Brimmer had the more restrictive limitations.  However, a review of the opinions shows that it was actually Dr. Ali who recommended the more restrictive limitation.

1          As for plaintiff's manipulative abilities, the ALJ noted Dr. Ali and Dr. Wettach

2   assessed manipulative limitations, but that the state agency sources and Dr. Brimmer did not.

3   The ALJ gave:

4                  greater weight to the opinions of state agency sources and Dr.
                   Brimmer because the record and clinical findings provide no
5                  support for manipulative limitations.  The claimant has had no
                   treatment for a disorder involving her hands.  There are no
6                  objective findings of strength loss, sensation changes, or atrophy of
                   the upper extremities that could warrant such limitations.  Grip
7                  strength has been normal.  Thus, it is found that the claimant does
                   not have manipulative functional limitations.
8   (CAR 21).

9                  Finally, as to plaintiff's postural limitations, the ALJ

10                 also noted that Dr. Wettach, and state agency sources assessed
                   occasional postural limitations.  However, Dr. Ali and Dr.
11                 Brimmer did not assess postural limitations.  It is noted that
                   occasional postural limitations are generally consistent with a full
12                 range of light work (Social Security Ruling 83-10).  Nonetheless,
                   the undersigned finds that the limited findings and treatment, and
13                 continual findings of full range of motion of the back and
                   extremities, support a conclusion that the claimant has no
14                 significant postural limitations.  Thus, Dr. Ali and Dr. Brimmer's
                   opinions are given greater weight in this functional area.
15  (CAR 21).

16         Thus, contrary to plaintiff's argument, the ALJ  did not simply adopt the non-

17  examining physician's opinion, ignoring Dr. Ali and Dr. Wettach's assessment.  Rather, he took

18  all of the medical opinions into consideration, discussed each of them thoroughly, and set forth

19  specific reasons for crediting one physician's opinion over another.  As set forth above, a

20  contradicted opinion of a treating or examining professional may be rejected for specific and

21  legitimate reasons.  To do so, the ALJ must set forth a detailed and thorough summary of the

22  facts and conflicting clinical evidence, stating his interpretation of the evidence, and making a

23  finding.  See Magallanes, 881 F.2d at 751-55.  This is precisely what the ALJ did here.  The ALJ

24  did not, as plaintiff contends, simply reject the opinions of Dr. Ali and Dr. Wettach.  In fact, the

25  ALJ credited a good portion of those opinions.  For the portions of Dr. Ali and Dr. Wettach's

26  opinions which were rejected, the ALJ set forth sufficient reasons for his rejection of those

1  contradicted opinions.  Similarly, the ALJ set forth sufficient reasons for rejecting portions of Dr.

2  Brimmer's opinion and the non-examining physican's opinion.  The undersigned finds no error

3  in the ALJ's treatment of the medical opinions in the record.

4                **C.    PLAINTIFF'S CREDIBILITY**

5        The Commissioner determines whether a disability applicant is credible, and the

6  court defers to the Commissioner's discretion if the Commissioner used the proper process and

7  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

8  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

9  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

10  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

11  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

12  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

13  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

14  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

15  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

16        If there is objective medical evidence of an underlying impairment, the

17  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

18  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

19  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

20            The claimant need not produce objective medical evidence of the
      [symptom] itself, or the severity thereof.  Nor must the claimant produce

21        objective medical evidence of the causal relationship between the
      medically determinable impairment and the symptom.  By requiring that

22        the medical impairment "could reasonably be expected to produce" pain or
      another symptom, the Cotton test requires only that the causal relationship

23        be a reasonable inference, not a medically proven phenomenon.

24  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

25  F.2d 1403 (9th Cir. 1986)).

26  / / /

                      13

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does not . . . [necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that

14

they show that the claimant is "able to spend a substantial part of his day engaged in pursuits

involving the performance of physical functions that are transferable to a work setting."  Fair,

885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily

activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676,

681 (9th Cir. 2005).

Here, the ALJ found plaintiff's testimony not entirely credible.  In so finding, he

stated that plaintiff's "statements concerning the intensity, persistence and limiting effects of

[her] symptoms are not credible to the extent they are inconsistent with the residual functional

capacity assessment . . . ."  (CAR 19).  He further explained that plaintiff's

> allegations regarding her degree of pain and fatigue, and her
> functional limitations related to pain are not credible because they
> are not supported by her minimal treatment, lack of ongoing
> medication, the limited positive objective clinical findings, and the
> record as a whole.  The claimant was seen by a rheumatologist on
> one occasion, but there is no evidence of further treatment from
> this source.  All examination findings show that the claimant has
> muscle tenderness, and occasional spasm.  However, range of
> motion, strength, reflexes, and sensation have been intact.  The
> claimant has a normal gait and there is no atrophy from disuse of
> her arms or legs as would be expected if she limited her activity to
> the degree she has stated.  The claimant has alleged multiple
> broken ribs from osteoporosis, but this has not been proven in the
> record.  In fact, an x-ray of the ribs showed no fracture.  The record
> shows that the claimant was often on limited pain medication.  She
> has not undergone physical therapy or other alternative treatments.
> Thus, her allegations of disabling pain and severe restrictions in
> sitting, standing, and walking are not credible.

(CAR 20).

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting her

testimony.  She contends the reasons set forth in the ALJ's decision were not legitimate or

convincing.  She states the ALJ failed to take into consideration all of her symptoms, testimony

and treatment records.  Defendant counters that the ALJ clearly and properly discredited

plaintiff's testimony.

Contrary to plaintiff's argument, the ALJ set forth several clear and convincing

reasons for discrediting her testimony.  The ALJ does not solely rely on the lack of objective

1  medical evidence supporting her testimony, but also offers other additional reasons for doing so.

2  Certainly the lack of objective medical evidence is one of the reasons, which is supported by the

3  record.  Plaintiff argues the ALJ's statement regarding treatment she received from a

4  rheumatologist was inaccurate, because she saw Dr. Powell not just once as the ALJ stated, but

5  actually twice.  The undersigned agrees; she saw Dr. Powell for the first time on January 17,

6  2005, and then again on February 14, 2005.  At the January 17, 2005, visit, Dr. Powell set up a

7  plan to treat her fibromyalgia.  He explained to plaintiff the treatment protocol, which included a

8  seven-month stress management course and medicine regime.  (CAR 307-308).  She was directed

9  to return in two weeks for reevaluation.  Plaintiff's next visit was actually four weeks later, on

10  February 14, 2005.  At that visit, it appears her medication was adjusted, and she was to return in

11  three weeks.  However, there are no further records, so it appears she never returned.  Plaintiff

12  argues this does not support the ALJ's credibility determination, explaining that she did not

13  follow up with Dr. Powell as his treatment did not help.   The undersigned questions this rational.

14  Dr. Powell stated his treatment plan would take seven-months, not four weeks and just two visits.

15  Plaintiff's decision to stop treatment after such a short time, and apparently without seeking

16  advise from her primary care physician, does not support her contention that the ALJ's credibility

17  determination was erroneous.

18          In addition, the ALJ provided other reasons for his credibility determination,

19  including plaintiff's limited pain medication, minimal treatment, and limited objective medical

20  findings.  Plaintiff argues her minimal treatment should not be used against her as she had stated

21  she had limited funds for treatment, including x-rays.  The undersigned agrees that where lack of

22  funds prohibits the treatment a claimant can receive, it alone cannot be used to discredit the

23  testimony.  However, here it was just one of several reasons the ALJ provided.  In addition, while

24  plaintiff did state she had limited funds for treatment, she also testified at the hearing that she had

25  medical insurance coverage.  (CAR 322).  It is unclear to the court whether she had medical

26  insurance throughout the relevant time frame or only at the time of the hearing.  However, if she

16

1  had insurance, it is unclear why she did not seek additional treatment.

2          The court finds the reasons the ALJ set forth for discrediting plaintiff's testimony

3  regarding the degree of her pain, fatigue, and limitations are clear and convincing and supported

4  the record as a whole.  Giving the ALJ's opinion the proper deference it is entitled, the

5  undersigned cannot find the determination was erroneous.  See Fair, 885 F.2d at 604.

6          **D.  THIRD PARTY STATEMENTS**

7           Plaintiff further contends the ALJ improperly disregarded the statements of her

8  husband and sister regarding plaintiff's limitations.  "[L]ay witness testimony as to a claimant's

9  symptoms or how an impairment affects ability to work is competent evidence, and therefore

10 cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

11 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family

12 members in a position to observe a plaintiff's symptoms and daily activities are competent to

13 testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must

14 give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919; see also Stout v.

15 Commissioner SSA, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss

16 competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless

17 it can confidently conclude no reasonable ALJ, when fully crediting testimony, could have

18 reached different disability determination).

19          Here, the ALJ set forth the statements of both plaintiff's husband and sister, as

20 follows:

21          The claimant's husband, Edgar Miller, also completed statements
           dated October 10, 2007 and March 12, 2008.  He stated that his
22          wife was in constant pain.  He and his daughter did all of the
           household chores.  He said that sometimes he even had to carry his
23          wife to the restroom.  She continued to have trouble focusing.  She
           had difficulty sleeping and had to take sleep aids (Exhibits 80E,
24          83E).

25          The claimant's sister, Gloria DeLong, said that the claimant had
           health problems all of her life.  However, over the last few years,
26          her health deteriorated further.  She could no longer clean her

17

house, cook, or shop without help.  Her bones are so fragile, that
they have broken even when coughing (Exhibit 82E).

(CAR 18).

The ALJ discounted these statements, stating:

Similarly, the statements by the claimant's husband and sister are
given little weight because they are inconsistent with the record as
noted above, as well as being inconsistent with the medical
opinions of record.

(CAR 21).

Plaintiff argues both her husband and sister provided statements supporting her

limited activities and abilities.  She argues that contrary to the ALJ's reasons, the statements from

her family were consistent with the medical evidence and her own testimony.  Defendant

counters that the ALJ's credibility determination met the legal standards, that inconsistency with

medical evidence is a germane reason for discrediting lay witness testimony.

The undersigned agrees that the reason provided by the ALJ, inconsistency with

medical evidence, is an acceptable reason.  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th

Cir. 2005 ("An ALJ need only give germane reasons for discrediting the testimony of lay

witnesses.  Inconsistency with medical evidence is one such reason.") (citing Lewis v. Apfel, 236

F.3d 503, 511 (9th Cir. 2001)).   The court also finds the reason provided is supported by

substantial evidence in the record, and therefore was not erroneous.

**E.  VOCATIONAL EXPERT TESTIMONY**

Finally, plaintiff contends that the ALJ failed to pose a legally adequate

hypothetical to the vocational expert (VE) at the hearing.  She claims the hypothetical posed

failed to include all of her functional limitations.

At step four of the sequential analysis, a determination is required as to whether

the claimant's impairment prevents him/her from performing his or her past work.  See 20 CFR

§ 404.1520(a).  "Although the burden of proof lies with the claimant at step four, the ALJ still

has a duty to make the requisite factual findings to support his conclusion."  Pinto v. Massanari,

18

1    249 F.3d 840, 844 (9th Cir. 2001).  To make that determination, an ALJ may utilize the

2    testimony of a vocational expert.  See id.; see also Magallanes v. Bowen, 881 F.2d 747, 756 (9th

3    Cir. 1989).  In so doing, the ALJ may propound hypothetical questions to the vocational expert

4    based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's

5    limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).

6            Hypothetical questions posed to a vocational expert must set out all the

7    substantial, supported limitations and restrictions of the particular claimant.  See Magallanes, 881

8    F.2d at 756.  If a hypothetical does not reflect all the claimant's limitations, the expert's

9    testimony as to jobs in the national economy the claimant can perform has no evidentiary value.

10   See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the

11   expert a range of hypothetical questions based on alternate interpretations of the evidence, the

12   hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

13   substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

14   Cir. 1988).

15           The hypothetical question posed to the VE at the hearing in this case was as

16   follows:

17           If we take a hypothetical individual similar to the claimant who is
             45 years of age, has a tenth grade education, work history as in the
18           record, . . . is able to lift/carry, push and/or pull occasionally 20
             pounds frequently 10, can sit eight hours out of an eight-hour day
19           with normal breaks, who can stand and walk six hours out of an
             eight-hour day with normal breaks, who has no limitations on the
20           ability to understand, remember and carry out simple job
             instructions and no limitations on the ability to make judgments on
21           simple work-related decision.  The ability to carry out - - receive,
             understand, remember and carry out detailed instructions is
22           slight[ly] limited.  By slight there's some mild limitation in this
             area, but the individual can function well.  The ability to make
23           judgments on detailed work related decisions are slightly limited.
             There are no limitations to interact appropriately with the public,
24           supervisors and co-workers.  There's a slight limitation on the
             ability to work - - to respond appropriately to work pressures in the
25           usual work setting and to changes in a routine work setting.  In
             your - - can this individual in your opinion perform any of the past
26           work performed by the claimant?

1    (CAR 356-57).  The VE responded that such an individual "could perform all of the job duties

2    that she has done in the past in all the jobs that I mentioned," (this included tribal police

3    dispatcher, security guard, cashier, and housekeeper) except the home health aide, which was

4    considered medium work.  (CAR 357).

5            Plaintiff's attorney then proposed another hypothetical to the VE, which included

6    the following additional limitations:

7               that the individual would only be able to occasionally climb ramps,
                stairs, ladders, ropes, scaffolds, would only be able to occasionally
8               stoop, kneel, crouch and crawl.  The individual would be able to
                stand and walk up to two hours [out of an eight-hour day], but she
9               would need a break every half hour. . . . And she would be limited
                to occasional as far as manipulating fine and gross objects.  And
10              limited to only occasional pushing and pulling.  On that basis,
                would the hypothetical individual be able to return to past relevant
11              work.

12   The VE responded that such a person would not be able to return to the past relevant work.  In

13   addition, the VE stated "I cannot identify any occupations that would allow that many breaks

14   every half hour."  (CAR 358).

15           As discussed above, the court finds the RFC set forth by the ALJ is supported by

16   the evidence in the record.  The hypothetical the ALJ posed to the VE takes into account all of

17   plaintiff's limitations as assessed in the RFC.  While the ALJ's determination as to plaintiff's

18   RFC may not have been the only one possible, it is supported by substantial evidence, and as

19   such will not be disturbed here.  As the hypothetical the ALJ posed included all of the limitations

20   he determined to be supported by the evidence, and that determination was not erroneous, the

21   hypothetical posed must be considered legally adequate.  Plaintiff argues that if the ALJ had

22   properly credited Dr. Ali, Dr. Wettach, her testimony, and that of her husband and sister, a

23   finding of disabled would have been inescapable.  While that may be true, the ALJ did not error

24   is his treatment of the medical opinions or the various testimony in the record.  As such, the court

25   finds no error in the ALJ's hypothetical.

26   / / /

1

**IV.  CONCLUSION**

2    Based on the foregoing, the court concludes that the Commissioner's final

3  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

4  ORDERED that:

5    1.  Plaintiff's motion for summary judgment (Doc. 20) is denied;

6    2.  Defendant's cross-motion for summary judgment (Doc. 26) is granted; and

7    3.  The Clerk of the Court is directed to enter judgment and close this file.

8

9  DATED:  March 28, 2011

10

11               **CRAIG M. KELLISON**
               UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

21